UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:21cv322

| | | |
|---|---|---|
| STEPHANIE BOTTOM | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **SECOND AMENDED COMPLAINT** |
| | ) | (42 U.S.C. § 1983) |
| | ) | Jury Trial Demanded |
| CITY OF SALISBURY, | ) | |
| OFFICERS DEVIN BARKALOW ADAM BOUK, | ) | |
| Individually and in their official capacities | ) | |
| as Salisbury City police officers; and | ) | |
| DEPUTY MARK BENFIELD, | ) | |
| Individually and in his official capacity as | ) | |
| a Rowan County Deputy; | ) | |
| SHERIFF KEVIN AUTEN, | ) | |
| In his official capacity as Sheriff of Rowan County, | ) | |
| THE PENNSYLVANIA NATIONAL MUTUAL, | ) | |
| CASUALTY INSURANCE COMPANY, as Surety; | ) | |
| Defendants. | | |

_____

**NOW COMES** the Plaintiff, Stephanie Bottom, by and through undersigned counsel,

filing this complaint alleging:

**PRELIMINARY STATEMENT**

1.      This action is brought under 42 U.S.C. § 1983 for injunctive and declaratory relief,

and for money damages to redress Defendants' violations of Plaintiff's rights guaranteed by the

United States Constitution. Plaintiff, a then-67-year-old Black woman, was traveling on Interstate

85 in Rowan County on May 30, 2019, posing no threat of danger to officers, when Defendants

stopped her, ostensibly for speeding ten miles over the speed limit and failure to heed blue lights.

Upon information and belief, the Salisbury Defendants were motivated to stop Plaintiff and

1

investigate her for drug activity in substantial part because of her race. They later requested the assistance of Defendant Rowan County Sheriff's Deputy Benfield to accomplish the stop.

2. Upon stopping Plaintiff, the Officer and Deputy Defendants physically pulled her from her vehicle at gun point and by her hair—by grabbing a "handful of dreads," as one put it—and tore her shoulder (rotator cuff), causing her serious bodily injury. After she was arrested, Defendants unlawfully searched her vehicle and purse and released her to emergency medical personnel. The Salisbury Defendants' decision to stop the Plaintiff involved the application of an unlawful racial profile, violating the Constitutional prohibition on selective enforcement and the Fourteenth Amendment to the U.S. Constitution. The Officer and Deputy Defendants' use of excessive force and unlawful search violated the Fourth and Fourteenth Amendments of the U.S. Constitution.

3. Defendant Benfield's participation in the unlawful use of force and search was condoned by the Rowan County Sheriff, Defendant Auten, who approved and condoned the unlawful behavior as consistent with the policies and practices of the Rowan County Sheriff's Department.

4. Defendant Officers Bouk and Barkalow's racially discriminatory selective enforcement practices, their unlawful and racially discriminatory use of force, and their unconstitutional search were reviewed by the Salisbury Chief of Police, were consistent with the policies and practices of the Salisbury Police Department, and were thereby condoned by the Defendant City of Salisbury.

5. Plaintiff seeks damages for the violation of her right to be free from racial discrimination and for the use of excessive force and unlawful search, and she seeks injunctive and declaratory relief against the policies, practices, and customs described herein that violate the

Fourth and Fourteenth Amendments. Additionally, Plaintiff seeks compensatory damages, an award of attorney's fees and costs, and such other relief as this Court deems equitable and just.

## JURISDICTION AND VENUE

6.      Jurisdiction exists for this action pursuant to 42 U.S.C. § 1983, the Due Process Clause, the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1988 (providing for attorney fees and litigation expense awards in actions arising under 42 U.S.C. § 1983). The Court has jurisdiction of this action under §1331 and §1343. Supplemental jurisdiction over Plaintiffs' state law claims is pursuant to 28 U.S.C. §1367.

7.      Venue is proper in this district under 28 U.S.C. §1391(b) because the acts and omissions giving rise to Plaintiffs claims occurred in Rowan County. Therefore, the appropriate venue for this action is the United States District Court for the Middle District of North Carolina.

## PARTIES

8.      The allegations contained in previous paragraphs of this Complaint shall be fully incorporated and re-alleged as if fully set forth herein.

9.      **Stephanie Bottom** (hereinafter "Plaintiff"), is an African American librarian who was 67-years old at the time of the incident giving rise to this Complaint. She is a citizen and resident of Fulton County, Georgia.

10.     Upon information and belief, **Mark Benfield** (hereinafter referred to as "Defendant Benfield") is a citizen and resident of Rowan County, North Carolina. At all times relevant to this complaint, Defendant Benfield was employed by the Rowan County Sheriff's Office, was an agent of said Sheriff's Office, and was acting under the color of state law in the course and scope of his

Case 1:21-cv-00322-WO-JEP   Document 44   Filed 07/27/22   Page 3 of 31

duties and functions as an agent, employee, and officer of the Rowan County Sheriff's Office in engaging in the conduct described herein. Defendant Benfield is sued in his official and individual capacities.

11.     **Sheriff Kevin Auten** (hereinafter referred to as "Defendant Auten) is the duly elected Sheriff of Rowan County, North Carolina.

12.     Defendant **Auten** is sued in his official as Sheriff of Rowan County.  At all times relevant to this complaint, Defendant Auten was the duly elected Sheriff of Rowan County, North Carolina. (Defendant Coleman is hereinafter referred to as Defendant Auten or Defendant Sheriff.)

13.     Upon information and belief, Defendant **Auten** is a citizen and resident of Beaufort County, North Carolina.

14.     Upon information and belief, Defendant **Pennsylvania National Mutual Casualty Insurance Company** (hereinafter "Defendant Surety") is a corporation organized and existing under the laws of the State of Pennsylvania and is the surety in contract with the Rowan County Sheriff's Office and does business in North Carolina.

15.     At all times relevant to this complaint Defendant **Auten** maintained an official bond issued by Defendant Surety in the amount of $2,000,000 as required by N.C. Gen. Stat. § 162-8 and laws of North Carolina.

16.     The official bond issued by Defendant Surety to Defendant **Auten** and the deputies of his office as Sheriff of Rowan County, covers damages resulting from the neglect, misconduct, or misbehavior of the Sheriff or his deputies in the performance of their official duties.

17.     Defendant Officer **Adam Bouk** (hereinafter "Defendant Bouk") is, and at all relevant times was, employed as an officer for Defendant City, and was acting in the course and

4

scope of his official duties as a police officer and under color of state law. Upon information and belief, Defendant Officer Bouk is a citizen and resident of Rowan County, North Carolina.

18.     Defendant Officer **Devin Barkalow** (hereinafter "Defendant Barkalow") is, and at all relevant times was, employed as an officer for Defendant City, and was acting in the course and scope of his official duties as a police officer and under color of state law.

19.     Defendant **City of Salisbury** is a municipal corporation and political subdivision of the State of North Carolina, organized and existing pursuant to the Constitution and laws of the State of North Carolina. Defendant City is governed by a City Council, and the actions alleged herein constitute the official policy and custom of Defendant City, in violation of Plaintiff's constitutional rights. Such a violation was part of a pattern and practice of conduct that violates the constitutional rights of Plaintiff, and other persons similarly situated to Plaintiff.

20.     Defendant City maintains and administers the Salisbury Police Department ("SPD"), and it exercises supervisory responsibility over Defendant Officers. Defendant City, by and through the mayor, city manager, and city council, has final policy-making authority over the SPD, including the hiring, retention, discipline, and termination of SPD employees. Defendant City engages in a pattern and practice of failing to properly train SPD officers to conduct lawful traffic stops and arrests. Defendant City has ratified and approved Defendant Officers' behavior as consistent with the policy, practice, procedure, and custom of Defendant City and the SPD.

21.     Defendant Officers are responsible for executing the official policies, decisions, practices, and customs of the SPD and, thereby, of Defendant City.

22.     At all relevant times, the acts and practices of Defendants, and those acting at their direction, were performed under color of state law and constitute "state action" within the meaning of the United States Constitution.

23.     Rowan County, North Carolina is where the events giving rise to the Plaintiff's claims occurred and where the causes of action in this case arose.

## JURY DEMAND

24.     Plaintiff demands trial by jury in this action on each and every one of her claims.

## WAIVER OF IMMUNITY

25.     On information and belief Defendants are protected by a local government risk pool, authorized under the provisions of Article 39 of North Carolina General Statute Chapter 58, or one or more policies of liability insurance.

26.     On information and belief, at the date and time alleged herein, Rowan County was a participant in the North Carolina Association of County Commissioners Liability and Property Pool.

27.     Upon information and belief, Rowan County Sheriff Auten and the Defendant deputies, agents and employees waived or further waived any governmental immunity to the extent they had in force at all relevant times, bonds, additional bonds, plans of insurance entered pursuant to N.C. Gen. Stat. § 153A-435 and/or participation in a local government risk pool pursuant the provisions of Article 39 of North Carolina General Statute Chapter 58, to cover acts, omissions, negligence and/or misconduct as alleged hereinafter by Plaintiff.

28.     Defendant Deputies have waived the defense of governmental immunity, pursuant to North Carolina General Statute §153A-435, to the tort claims alleged by the Plaintiff herein.

29.     Defendant City's policies or customs were the direct and proximate cause of the violation of Plaintiff's rights.

30.     At all relevant times hereto, Defendant City was authorized to and did waive its immunity from civil liability in tort by purchasing liability insurance, by contract with an insurance

6

company, and/or by participation in an insurance risk pool that covers the claims asserted in this legal action.

31.     To the extent of such insurance coverage, Defendants have waived any official, sovereign, or governmental immunity to which they might otherwise be entitled.

32.     Upon information and belief, Defendant City has a customary practice of waiving the doctrine of sovereign or governmental immunity as a legal defense with regard to claimants similarly situated to Plaintiff who have been injured by the acts and/or omissions of employees and agents of Defendant City.

33.     Through Defendant City's above-mentioned customary practice, Defendant City has waived any official, sovereign, or governmental immunity to which any Defendants may have otherwise been entitled.  Any assertion of said immunity is a violation of Plaintiff's equal protection and due process rights under the Fourth and Fourteenth Amendment of the United States Constitution, and Article I, Section 19 of the North Carolina Constitution.

## FACTUAL ALLEGATIONS

The allegations contained in previous paragraphs of this Complaint shall be fully incorporated and re-alleged as if fully set forth herein.

### The Traffic Stop

34.     On Thursday, May 30, 2019 around 8 o'clock in the evening, Plaintiff was traveling north on Interstate 85, which is a three-lane interstate on a section of the road that was under construction.

35.     While traveling north, Plaintiff noticed the blue lights of a law enforcement vehicle. At that point, Plaintiff began looking for a safe area to pull over.

36.     Plaintiff became fearful and did not want to pull off on the side of the road along the interstate, and she began looking for a more visible location to pull over.

7

37.     The Defendant officers would later tell Plaintiff that they sought to conduct a traffic stop because Plaintiff was driving 80 miles per hour in a 70 mile per hour speed zone.  Upon information and belief, however, the Salisbury Defendants, who were conducting the operation, decided to pull the Plaintiff over in substantial part because of her race, and because they believed that Plaintiff, a Black person with dreadlocks driving an SUV with Georgia plates, met the profile of a drug courier.

38.     Defendant officers became frustrated with Plaintiff when she did not pull over quickly enough.

39.     As Defendant officers followed her, Rowan County Master Deputy M.C. Smith, who is not a Defendant in this lawsuit, pulled up next to her and looked in her driver's side window and, according to his written report, determined that Plaintiff might "not [be] sure what was going on." He then twice identified Plaintiff to other officers via radio as "an older black female."

40.     While following behind Plaintiff, Defendant Barkalow made statements recorded by his body camera that Plaintiff was a "fucking retard" and a "douche bag." He described the events as "exciting" and said he was "at the edge of [his] seat."

41.     As Plaintiff attempted to pull over, Officer Smith pulled ahead of Plaintiff and used spike strips to immobilize Plaintiff's vehicle. Plaintiff came to an immediate stop on the median side of the interstate.

42.     Defendants Benfield and Barkalow approached Plaintiff's vehicle with guns drawn and pointed at Plaintiff. (See Exhibit 1 attached and incorporated by reference)

43.     With their guns drawn, Defendants Benfield, Barkalow, and Bouk screamed at Plaintiff to exit the vehicle.

44. Plaintiff was terrified by the officers threatening deadly force with their guns drawn.

45. Plaintiff attempted to exit the vehicle, but she was seated high from the ground and had difficulty getting down as she was being held at gun point.

46. Within five seconds of arriving at her drivers' side door with guns drawn, Defendants Benfield and Barkalow grabbed Plaintiff by her arm and hair and threw her from her Toyota Sequoia to the ground. (See Exhibits 2-4 attached and incorporated by reference)

47. Defendants failed to give Plaintiff a reasonable amount of time to exit her vehicle, and used an excessive amount of force in forcibly removing her from her vehicle.

48. Once on the ground, Defendants Benfield, Barkalow, and Bouk placed their arms and knees on her back. Plaintiff was lying face down on the ground. Defendants Benfield, Barkalow and Bouk pulled on her arms twisting them behind her back. (See Exhibit 5 attached and incorporated by reference)

49. Plaintiff shouted with pain and pled with Defendants Benfield, Barkalow, and Bouk to stop hurting her, indicating that a previous injury prevented her from putting her arms behind her back. Defendants ignored her pleas and continued to press her into the ground and force her arms behind her back in an attempt to hand cuff her.

50. Defendant Barkalow forced Plaintiff's left arm behind her to the point where Plaintiff's wrist was near her neck.

51. Eventually the force applied by Defendant officers caused Plaintiff's shoulder to "pop," tearing her rotator cuff and causing severe injury.

52. This injury eventually required surgery which did not fully repair the shoulder, and now there is permanent damage to her shoulder as a result of the Defendants' actions.

53.     Plaintiff was left on the ground screaming with pain. Plaintiff asked for medical attention, saying "I am hurting really bad," and Defendant officers refused treatment.

54.     Plaintiff explained to Defendant officers she was not driving fast and did not think they were trying to stop her. She said she was going to a funeral.

55.     Defendant officers responded, "Well honey, you had several miles to stop, why didn't you stop?"

56.     Defendant officers erroneously believed that Plaintiffs' failure to pull over in a timely manner justified the threat of deadly force and the use of force causing serious bodily injury.

57.     Plaintiff was fully restrained and away from the grab area of her car when Defendant officers decided to search her vehicle and purse.

58.     Defendants Benfield, Barkalow, and Bouk sat Plaintiff up and searched Plaintiff's vehicle and her purse which was located in her vehicle. Defendant Bouk searched the area around the driver's seat, including the driver's door panel.

59.     Defendant officers did not request consent from Plaintiff to search the vehicle or purse located in the vehicle. They searched her car and purse without a warrant or probable cause in violation of the Fourth Amendment to the United States Constitution.

60.     After the search, Defendant officers told Plaintiff to stand, but she could not stand because of the pain to her upper body.

61.     Defendants Barkalow and Bouk picked Plaintiff up by her arms, inflicting additional pain to her shoulder and forced her to stand.

62.     Defendant Officers placed her in back of a patrol vehicle.

63.     Plaintiff continued to scream with pain and ask for medical attention.

64.     Defendant Bouk commented to other officers in statements recorded on his body cam, "That's good police work, baby." Defendants congratulated each other for work they believed was well done. Defendant Barkalow bragged about grabbing a "handful of dreads," and said, "at that point, she earned it."

65.     Defendant officers eventually called for emergency medical assistance, and the paramedics determined that Plaintiff should go to the hospital.

66.     Upon information and belief, Defendant officers changed their mind about placing Plaintiff into custody once she was hospitalized in order to avoid paying the cost of her medical treatment.

67.     After she was injured, Defendant officers decided that taking her into custody was unnecessary.

68.     Defendant officers admitted to the EMS paramedics that it was unnecessary to arrest Plaintiff, and indicated they were going to issue a criminal summons to appear in court.

69.     Instead of placing her under arrest, Defendant officers issued a summons charging Plaintiff with speeding 80 mph in a 70 mph zone, failure to heed blue lights, and resisting, delaying, and obstructing an officer for allegedly "refusing to get out of her vehicle and pulling away from the officer."

70.     Plaintiff never refused to get out of her vehicle and never pulled away from an officer.

71.     Appearing in Court, Plaintiff plead responsible to failure to heed blue lights, and the other charges were dismissed.

*Racial Profiling and Racial Discrimination – Selective Enforcement by the Salisbury Defendants' in Deciding to Stop and to Use Force Against the Plaintiff*

72.     At all times relevant to this Complaint, Defendants were acting under color of law.

73.     In violation of the constitutional prohibition against selective enforcement, the Salisbury Defendants decided to make a pretextual traffic stop—ostensibly for speeding—and to use force against Plaintiff in substantial part because of her race and hairstyle (dreadlocks), and because the individual Salisbury Defendant Officers, relying on racial stereotypes, erroneously believed that Plaintiff fit the profile of a drug courier.

74.     Data reported by the Defendant Salisbury officers pursuant to N.C. General Statute 143B-903, which mandates the reporting of traffic stop data for purposes of identifying officers engaged in unlawful selective enforcement, indicates that over the course of his career, Defendant Bouk's traffic stops, searches, and uses of force disproportionately involved Black motorists and occurred at rates that exceeded the average Salisbury police officer. This data similarly indicates that Defendant Barkalow, over the course of his career, disproportionately stopped Black motorists at a rate that exceeded that of the average Salisbury police officer. Defendant Barkalow did not report his data on searches or uses of force, as required by the statute. Upon information and belief, the City of Salisbury was aware of and ratified Barkalow's failure to comply with statutory requirements for reporting his searches and uses of force.

75.     Salisbury PD's data indicates that 62.5% of motorists who have been subjected to force during traffic stops between 2002 and the present have been Black. Publicly available accounts of white motorists who did not incur serious injuries when apprehended for failing to stop for Salisbury police officers similarly indicate that race unconstitutionally informs the City of Salisbury's use of force practices, and that Black people are disproportionately and

12

discriminatorily subjected to excessive force during traffic stops. *See, e.g.*, David Whisenant, *Driver and Juvenile Detained by Police After Chase Through Streets and Woods*, WBTV (Dec. 20, 2021), https://www.wbtv.com/2021/12/20/driver-juvenile-detained-by-police-after-chase-through-streets-woods/ (detailing arrest of two people who fled to elude officers, with no injuries reported); Staff Reports, *Kannapolis Man Arrested After Police Chase that Spanned Three Counties*, INDEPENDENT TRIBUNE (June 3, 2021), https://independenttribune.com/news/local/kannapolis-man-arreste d-after-police-chase-that-spanned-three-counties/article_6a495a70bd72-11eb-ad72-37bb2ecbdde1.html (detailing arrest with no major injuries of man who eluded officers at speeds as high as 100 mph).

***Excessive Force in Approaching the Vehicle***

76.     When Defendants pulled over Plaintiff, Defendants Benfield and Barkalow approached the vehicle with their guns drawn and directed at Plaintiff.

77.     Plaintiff was not driving at a reckless speed, leading a high-speed chase, or using evasive maneuvers that would pose an immediate threat to the safety of the officers or others.

78.     At all times relevant to approaching Plaintiff's vehicle, Defendants Benfield, Barkalow, and Bouk were given no reason to believe Plaintiff was armed or posed any real threat to the Defendants. Defendants were aware, based on their radio communications, that Plaintiff was an elderly woman.

***Excessive Force in Removing Plaintiff from the Vehicle and Effecting the Arrest***

79.     At all times relevant to removing Plaintiff from her vehicle, Defendants Benfield, Barkalow, and Bouk were operating under color of law.

13

80.     In violation of the Fourth Amendment right to be free from excessive force, Defendant Barkalow unreasonably grabbled Plaintiff by her hair and threw her from her Toyota Sequoia to the ground.

81.     Defendants Benfield, Barkalow, and Bouk saw Plaintiff was an elderly woman when they threw open the door to Plaintiff's vehicle and demanded she exit the vehicle.

82.     It is difficult for Plaintiff to exit her vehicle quickly due to her age and medical condition.

83.     Plaintiff did not pose a threat to Defendants or anyone else as she had her hands up as she attempted to exit the vehicle.

84.     Defendants' decision to ultimately release her to medical care, instead of keeping her in police custody, demonstrates that the initial decision to take her into custody was unreasonable.

85.     Defendants' use of unreasonable and excessive force was intentional, or so grossly negligent as to amount to a reckless disregard to the constitutional right of Plaintiff to be free from unreasonable seizure in the form of excessive force.

***The Unlawful Search of Plaintiff's Vehicle and Purse***

86.     At all relevant times regarding the search of Plaintiff's vehicle and purse, Defendants were acting under color of law.

87.     Plaintiff was suspected of committing the offenses of speeding, failure to heed blue lights and siren, and non-assaultive RDO (resist, delay, or obstructing an officer).

88.     Defendants Benfield, Barkalow, and Bouk placed Plaintiff in handcuffs and secured her at the front of her vehicle prior to commencing their search of Plaintiff's vehicle and purse. At

14

the time of the search, Plaintiff was at the front of her vehicle and unable to reach her vehicle or purse.

89.     At no time did Defendants request, nor did Plaintiff give, consent to search the vehicle and purse.

*Plaintiff's Injuries*

90.     As a result of the unlawful actions of the Defendants, the Plaintiff suffered mental distress and she incurred serious physical injury, in addition to the constitutional injury of racial discrimination, excessive force, and the violation of her right to privacy. The tear to Plaintiff's rotator cuff in her shoulder required surgery, permanently scarring and limiting the use of her shoulder.

**<u>FIRST CAUSE OF ACTION</u>**
**Fourth and Fourteenth Amendments: Excessive Force and Unreasonable Search**
**Defendant Deputies/Officers in their individual and official capacities.**

91.     The allegations contained in previous paragraphs of this Complaint shall be fully incorporated and re-alleged as if fully set forth herein.

*Excessive Force in Approaching the Vehicle*

92.     Defendant Deputies/Officers had no basis upon which to believe that Plaintiff was armed or posed any threat to the Defendants or anyone else when they approached Plaintiff's vehicle with their guns drawn and directed at Plaintiff.

93.     Defendant's approached Plaintiff's vehicle with their guns drawn and directed at Plaintiff under color of law, without probable cause and without exigent circumstances justifying the use of deadly force in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

94.     Defendants were deliberately indifferent to the fact that their use of force was unreasonable, excessive, and without lawful justification or excuse, and thus a violation of both statutory and constitutional law.

95.     As such, Defendants' willful, malicious, and/or reckless disregard of Plaintiff's federally protected rights entitle Plaintiff to an award of punitive damages.

96.     As a direct and proximate consequence of these unlawful acts, Plaintiff has suffered and continues to suffer loss, financially and physically, and is thereby entitled to compensatory damages.

*Excessive Force in Removing Plaintiff from Vehicle/Effecting the Arrest*

97.     Defendants Benfield, Barkalow, and Bouk used excessive force in the course of an illegal seizure of Plaintiff, in violation of the Fourth Amendment and its "reasonableness" standard.

98.     Defendant Benfield, under the color of law and the policy, custom, and/or practice of the Rowan County Sheriff's Office, unlawfully and unreasonably threw Plaintiff Bottom from her vehicle when she was attempting to exit as commanded with her hands up.

99.     Defendant Barkalow, under the color of law and the policy, custom, and/or practice of the Salisbury Police Department, unlawfully and unreasonably grabbed Plaintiff Bottom by her hair and threw her from her vehicle when she was attempting to exit as commanded with her hands up.

100.     In forcing Plaintiff's arms behind her back and up to her neck, Defendant Barkalow dislocated Plaintiff's shoulder and tore her rotator cuff, causing severe injury.

16

101. Defendants acted unreasonably, maliciously, and without justification, because Plaintiff did not pose a threat to Defendants and was lawfully complying with the demands of the Defendants to exit the vehicle with her hands up when they threw plaintiff from her vehicle.

102. Defendants used clearly excessive and objectively unreasonable force against Plaintiff.

103. Plaintiff Bottom suffered multiple injuries as a direct result of the Defendants' actions.

104. The facts and circumstances of this incident demonstrate the unreasonableness of the Defendants' actions, including the fact that Plaintiff was unarmed and not posing a threat or danger to the police.

105. Defendants were deliberately indifferent to the fact that their use of force was unreasonable, excessive, and without lawful justification or excuse, and thus a violation of both statutory and constitutional law.

106. As such, Defendants' willful, malicious, and/or reckless disregard of Plaintiff's federally protected rights entitle Plaintiff to an award of punitive damages.

107. As a direct and proximate consequence of these unlawful acts, Plaintiff has suffered and continues to suffer loss, financially and physically, and is thereby entitled to compensatory damages.

***Search of the Vehicle and Purse***

108. Defendants Benfield, Bouk, and Barkalow under the color of North Carolina law and the policy, custom, and/or practice of the Rowan County Sheriff's Office and the Salisbury Police Department, unlawfully searched Plaintiff's vehicle on May 30, 2019 when Plaintiff was

suspected of committing crimes to which evidence in support thereof could not possibly have been found inside the vehicle.

109. Plaintiff was seized when Defendants held her to the ground and handcuffed her against her will.

110. Plaintiff was unarmed and posed no threat to the Defendants. The facts and circumstances known to Defendants Benfield, Barkalow, and Bouk at the time do not reasonably support a belief that Plaintiff had committed or was committing a crime to which a search of the vehicle would be warranted, or that Plaintiff was a threat to Defendants.

111. Defendants acted unreasonably and against clearly established Fourth Amendment law when they searched Plaintiff's vehicle without a warrant and without probable cause while investigating the crime of speeding and while Plaintiff was in custody.

112. Plaintiff was in custody and placed at the front of her vehicle when Defendants commenced their search of Plaintiff's vehicle. Thus, Plaintiff was secured and not in reaching distance of the vehicle or purse at the time of the search.

113. It was objectively unreasonable for Defendants to believe that evidence relevant to the commission of the crime of speeding would be found in the vehicle.

114. These unlawful actions deprived Plaintiff of her constitutional right to be secure against unreasonable searches and seizures.

115. Defendants were deliberately indifferent to the fact that their use of force was unreasonable, excessive, and without lawful justification or excuse, and thus a violation of both statutory and constitutional law.

116. As such, Defendants' willful, malicious, and/or reckless disregard of Plaintiff's federally protected rights entitle Plaintiff to an award of punitive damages.

117. As a direct and proximate consequence of these unlawful acts, Plaintiff has suffered and continues to suffer loss, financially and physically, and is thereby entitled to compensatory damages.

**SECOND CAUSE OF ACTION**
**Fourth and Fourteenth Amendments United States Constitution**
**Practices and Policies of City of Salisbury through the Salisbury City Police and Rowan County Sheriff's Department, 42 U.S.C. §1983**
*Policy, Practice, and/or Condonation of Excessive Force*

118. The allegations contained in previous paragraphs of this Complaint shall be fully incorporated and re-alleged as if fully set forth herein.

119. Upon information and belief, Defendants City of Salisbury, the Salisbury Police Department and Sheriff Auten, Rowan County Sheriff's Department ("hereinafter Department Defendants") knew of the excessive force and unlawful searches of Plaintiff after Defendant officers reported the incident and issued the criminal summons.

120. Department Defendants were deliberately indifferent to the training and supervision of Defendant Officers in their performance of duties.

121. Department Defendants failed to properly instruct the above-named officer defendants in Fourth Amendment search and seizure requirements of the Constitution.

122. Officer Defendants believed, contrary to clearly established constitutional law, that the excessive force used on Plaintiff and the search of her car without a warrant while she was arrested elsewhere was reasonable under the Fourth Amendment.

123. Moreover, Department Defendants' deliberate indifference to the training and supervision of officer Defendants constitute and represent the policies, practice, and customs of the Rowan County Sheriff's Department, Salisbury Police Department, and City of Salisbury.

124.     Upon information and belief, Department Defendants have not reprimanded Officer Defendants nor have they faced disciplinary repercussions for their actions during this incident, evidencing the tacit approval, ratification, and condonation by Department Defendants of their conduct in this case.

125.     As a result, Department Defendants' practices, policies, and failure to adequately train and supervise Officer Defendants directly and proximately caused injury and damage to Plaintiffs.

126.     As such, Department Defendants' willful, malicious, and/or reckless disregard of Plaintiffs' federally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution entitle Plaintiffs to an award of compensatory damages.

127.     As a result of Department Defendants' practices, policies, and failure to adequately train and supervise officer Defendants, Plaintiff was deprived of her liberty and subjected to great physical and emotional pain and suffering entitling her to compensatory damages.

### THIRD CAUSE OF ACTION
**Fourteenth Amendment: Racial Profiling/Discrimination and Selective Enforcement
Salisbury Officers in their Individual and Official Capacities**

128.     The allegations contained in previous paragraphs of this Complaint shall be fully incorporated and re-alleged as if fully set forth herein.

129.     Upon information and belief, the individual Salisbury Defendants to this action stopped Plaintiff in substantial part because she is Black, in violation of the Constitutional prohibition on "selective enforcement of the law based on considerations such as race." Wren v. United States, 517 U.S. 806, 813 (1996).

130.     Upon information and belief, during the relevant time period, the individual Salisbury Defendants were attempting the engage in drug interdiction by initiating traffic stops of vehicles that they believed fit the profile of drug couriers.

131.     Upon information and belief, these Defendants observed Plaintiff, a Black person with dreadlocks, driving an SUV with a Georgia license plate, and they decided to stop her because of their belief that a person fitting such a profile was likely to be involved in drug activity.

132.     Upon information and belief, Defendants Bouk and Barkalow's actions against Plaintiff were consistent with data they reported pursuant to N.C. Gen. Stat. 143B-903, which indicates that, throughout their career, they have disproportionately stopped Black motorists, with respect to both their rate in the population and to the stop rate of other Salisbury police officers.

**FOURTH CAUSE OF ACTION**
**Fourteenth Amendment: Pattern and Practice of Racially Discriminatory Use of Force (Selective Enforcement)**
**Defendant City of Salisbury**

133.     The allegations contained in previous paragraphs of this Complaint shall be fully incorporated and re-alleged as if fully set forth herein.

134.     By the conduct and actions of its police officers as described above, Defendant City of Salisbury has engaged in a racially discriminatory pattern and practice of using physical force against Black motorists. The department's data, reported to the SBI pursuant to N.C. Gen. Stat. 143B-903, indicates that Black people made up a sizeable majority of those motorists whom officers used force against in traffic stops over the past twenty years.

135.     In addition, the City of Salisbury has a pattern and practice of using force against black motorists who are charged with eluding arrest, and not using force against similarly situated white motorists charged with eluding arrest.

136.     The City of Salisbury is aware of its own use force data. The City's affirmation and

ratification of the individual Defendant officers' conduct in this case, which was captured on video,

evidences the City's support of the racially discriminatory use of force practices employed against

the Plaintiff.

## FIFTH CAUSE OF ACTION
### Assault and Battery
### Individual Defendants

137.     The allegations contained in previous paragraphs of this Complaint shall be fully

incorporated and re-alleged as if fully set forth herein.

138.     By the conduct and actions described above, Defendants Benfield, Bouk, and

Barkalow intentionally inflicted the common law torts of assault and battery upon Plaintiff.

139.     The acts and conduct of Defendants were the direct and proximate cause of injury

and damages to Plaintiff in violation Plaintiff's statutory and common law rights as guaranteed by

the laws of the state of North Carolina.

140.     The Defendants' actions constitute an assault upon Plaintiff in that they

intentionally attempted to injure Plaintiff or commit a battery upon Plaintiff.

141.     The Defendants' actions were intentional, unwarranted and without any just cause

or provocation. Defendants knew or should have known their actions were without lawful authority

or the consent of Plaintiff.

142.     As a result of the Defendants' actions, Plaintiff was injured physically and

emotionally wholly and solely by reason of the conduct described and Plaintiff did not contribute

thereto.

143.     As such, Plaintiff was subjected to physical harm and emotional humiliation and

thereby deprived of her liberties.

144.    The Defendants actions directly and proximately caused physical and emotional damage to Plaintiff who is entitled to compensatory and punitive damages as a result.

**SIXTH CAUSE OF ACTION**
**Statutory Action on Surety Bond**

145.    The allegations contained in previous paragraphs of this Complaint shall be fully incorporated and re-alleged as if fully set forth herein.

146.    Sheriff Auten, as the duly elected Sheriff of Rowan County, and as required by N.C. GEN. STAT. § 162-8, entered into a bond for the benefit of persons injured by the Sheriff's agents in the sum of $2,000,000, undertaking that in all things, the Sheriff would faithfully execute the duties of his office during his employment therein.

147.    The Sheriff's official bond, as alleged in the preceding paragraph, was in full force and effect at all times relevant to this Complaint.

148.    Defendant Surety, for valuable consideration, joined with Sheriff Auten as surety in the execution of the bond given to them as Sheriff, in the sum of $2,000,000 and thereby undertook that Sheriff Auten would faithfully execute the office of Sheriff and perform all duties incumbent upon them by reason of their election to said office.

149.    This bond was in full force and effect at all times relevant to this Complaint.

150.    In the actions and conduct set out herein, Defendant Benfield, in his official capacity, was acting within the scope of his employment and under the color of his office as an employee and agent of the Rowan County Sheriff's Office.

151.    The actions of Defendant Benfield acting in his official capacity, in the manner described above, constituted neglect, misconduct, misbehavior, and a breach of his official duties of office.

152. The actions of Defendant Benfield, acting in his official capacity, was in violation of the terms of the official bond entered into with Defendant Surety in the sum of $2,000,000.

153. Plaintiff is entitled to recover under Defendant Surety bond, pursuant to the provisions of North Carolina General Statute §58-76-5.

## ATTORNEY'S FEES AND COSTS

154. Pursuant to 42 U.S.C. § 1988, Plaintiff asserts the right to an award of attorney's fees and costs under its 42 U.S.C. § 1983 pleadings if they prevail.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs prays for judgment of the Court as follows:

1. That the Plaintiff have and recover compensatory damages from Defendants, including pain and suffering;

2. That the Plaintiff have and recover punitive damages from Defendants;

3. That the costs of this action be taxed against Defendants, including all court costs and attorney's fees;

4. For such other and further relief to which Plaintiff may be entitled under the allegations set forth herein and under applicable law; and

5. For such other and further relief as the Court may deem equitable by the court**.**

Respectfully submitted, this the 27 July 2022.

*//s// **C. Scott Holmes***
C. Scott Holmes
Attorney for Plaintiff
North Carolina Central University
Civil Litigation Clinic
640 Nelson Street
Durham, North Carolina 27707
Telephone: (919) 530-7463

Fax: (919) 530-7982
Email: Scott.holmes@nccu.edu
N.C. Bar No. 25569

***//s// Ian A. Mance***
Ian A. Mance
Attorney for Plaintiff
Emancipate NC
P.O. Box 309
Durham, North Carolina 27702
Telephone: (828) 719-5755
Email: ian@emancipatenc.org
N.C. Bar No. 46589

# Exhibit 1



OCA #19001932 - Benfield 3

# Exhibit 2



OCA #19001932 - Benfield 3

# **Exhibit 3**



# **Exhibit 4**



# Exhibit 5



<u>**CERTIFICATE OF SERVICE**</u>

This certifies that a copy of the foregoing **SECOND AMENDED COMPLAINT** was filed electronically with the Clerk of Court using CM/ECF system, which will send notification of such filing to the following:

Scott D. MacLatchie
Hall Booth Smith, P.C.
11215 North Community House Road
Suite 750
Charlotte, NC 28277
980-949-7820
SMacLatchie@hallboothsmith.com
*Attorney for Defendants Devin Barkalow,*
*Adam Bouk, and the City of Salisbury*

Patrick G. Spaugh
Womble Bond Dickinson (US), LLP
One West Fourth Street
Winston-Salem, NC 27101
704-331-4962
Patrick.Spaugh@wbd-us.com
*Attorney for Defendants Sheriff*
*Kevin Auten and Mark Benfield*

Christian Ferlan
Hall Booth Smith, P.C.
11215 North Community House Road
Suite 750
Charlotte, NC 28277
980-9859-0380
CFerlan@hallboothsmith.com
*Attorney for Defendants Devin Barkalow,*
*Adam Bouk, and the City of Salisbury*
*Mark Benfield*

James R. Morgan, Jr.
Womble Bond Dickinson (US), LLP
One West Fourth Street
Winston-Salem, NC 27101
336-721-3710
Jim.Morgan@wbd-us.com
*Attorney for Defendants Sheriff*
*Kevin Auten and*

Submitted this 27th day of July 2022

<u>/s/ C. Scott Holmes</u>
C. SCOTT HOLMES
North Carolina Central University
Civil Litigation Clinic
640 Nelson Street
Durham, NC 27707
Telephone: (919) 530-7463
Fax: (919) 530-7982
Email: scott.holmes@nccu.edu